MONROE, Appellant, v. SMITH et al., Respondents.

## (165 N. W. 532.)

(File No. 4033. Opinion filed December 13, 1917.)

1. **Pleadings—Suit on Contract—Defense of Illegality, Whether Available Under General Denial—Point Not Raised Below, Effect.**

   The point, that the illegality of the contract in suit, to be available, must be pleaded as a defense and cannot be considered under a general denial, cannot be urged for the first time on appeal.

2. **Contracts—Newspaper Subscribers Prize Contest—Money Paid by Successful Contestant, Without Bona Fide Subscriptions—Transaction, Whether Illegal.**

   In a suit by the husband of the successful one of two leading contestants for an automobile in a newspaper prize contest, to recover money paid by him for his wife to the promoter of defendant publisher of the newspaper, no actual subscriptions representing said amount so paid having accompanied said payment; it appearing that plaintiff had been informed by the promoter prior to making such payment that the leading opposing contestant's father had put up $500 for his daughter upon the representation by said promoter that she would lose the contest unless such sum was paid in addition to what the daughter had turned in in actual subscriptions with the understanding, that if his daughter won the contest the money was to be retained by the newspaper proprietors, but if she lost the contest it was to be refunded to the promoter; and that plaintiff's payment was made upon further representation of the promoter that if plaintiff's wife did not put up the amount so paid by him she would lose the contest; $50 of which amount was paid to the promoter; the suit being prosecuted upon the ground that said payment was obtained by fraud; **held,** that the transaction between plaintiff and defendants was illegal; that such payment could not be an honest fulfillment of terms of the contest, nor could money so paid, unaccompanied by bona fide subscription lists aggregating its amount, be recovered; the evidence showing that both plaintiff and his wife knew they were acting fraudulently, and the transaction being clearly a fraud upon all honest contestants.

3. **Contracts—Fraud in Effecting—Fraud to Overcome Another Fraud, Whether Justifiable Defense?**

It is not a justification of fraud set up as a defense, to assert that it was perpetrated to overcome another fraud.

4. **Same—Defense of Fraud—Parties In Pari Delicto—Public Policy As Paramount Issue—Statute.**

In a suit to recover money illegally paid by plaintiff under a newspaper subscription prize contest, on the ground that the payment so made was induced by fraud of defendant's agent and promoter, **held**, that, the facts showing the parties were **in pari delicto**, yet that the rule of **pari delicto**, under Civ. Code, Sec. 2423, providing that between those equally in the right, or equally in the wrong, the law does not interpose, is subject always to the rule of public policy which lies at the basis of the law of illegal contracts; that, it further appearing that the transaction in question is not the carrying on of the contest, but the obtaining of money by defendants from plaintiff and from another of two leading contestants for the prize, one of which was plaintiff's wife, through illegitimate means, and that the promoter of defendant publisher of the newspaper in question was aided therein by one of defendants, and that a judgment requiring said money to be refunded to plaintiff will tend to frustrate commission of fraud in similar future contests, therefore public policy will be thereby better served than by defeating plaintiff's recovery.

5. **Torts—Liability For—Tort As Officer of Corporation, Whether Corporation Liable Therefor.**

A person guilty of a tort cannot escape liability upon theory that he committed it as officer of a corporation. So **held**, in holding liable defendant corporation for fraud committed through representations and acts of its agent in promoting a newspaper subscription prize contest. And trial court erred in its conclusion of law "that said contest was for purpose of securing subscribers to defendant proprietors' newspaper, and that defendants are not liable in their personal capacity for the transactions complained of"; it appearing that one of the persons composing defendant company was privy to the fraud.

Appeal from Circuit Court, Spink County. Hon. ALVA E. TAYLOR, Judge.

Action by W. W. Monroe, against Al. C. Smith and another, to recover money paid to defendants' agent under a newspaper subscription prize contest. From a judgment dismissing the action, and from an order denying a new trial, plaintiff appeals. Reversed, and remanded for new trial.

*N. P. Bromley,* for Appellant.

*Sterling & Clark,* for Respondents.

(4.) To point four of the opinion, Appellant cited: Superior Coal Co. v. Darling Lumber Co., 127 Am. St. 275; Hendrickson v. Evans, 25 Pa. St. 441; Note, 113 Am. Rep. 724.

Respondent cited: Brown v. Tarkington, 3 Wall. 377, 18 L. Ed. 255; Civ. Code, Sec. 2423.

GATES, P. J.    The George A. Clark Printing Company, of which defendants were the president and secretary, conducted a campaign in the autumn of 1914 for the purpose of procuring subscriptions to the Journal-Observer, a newspaper published at Redfield.    Said campaign was conducted by means of an automobile contest, and according to the terms of said contest said automobile was to be awarded to the person securing the largest number of votes therefor, said votes being based upon the number and nature of subscriptions to the said Journal-Observer procured by various contestants.    The campaign was conducted by the Burgess-Johnson Company through one T. E. McGovern. Near the close of the campaign Miss Sadie Carr and the plaintiff's wife were the leading contestants for the prize.    McGovern represented to Miss Carr's father that she would lose the contest unless he put up $700 in addition to what his daughter had turned in on actual subscriptions.    Carr did put up $500 with the understanding that if his daughter won the contest the money was to be retained by the printing company, but if she lost the contest the money was to be refunded to him.    This understanding was evidenced by a promissory note for $500 signed by both defendants.    Then McGovern told plaintiff that the Carrs had put up $600, and if plaintiff's wife did not put up $450, she would lose the contest.    Plaintiff put up $450, of which $50 was paid to McGovern, and received from defendant Smith the following receipt:

"Redfield, South Dakota, 11-5-14.    Received of W. W. Monroe $400, to be returned to him if he or his wife does not receive Overland automobile to be given away November 7th, 1914, by the Journal-Observer.    A. C. Smith."

Plaintiff's wife won the automobile.    Without the payment of the $450 Miss Carr would have won it.    Miss Carr received 6,085,300 votes.    Mrs. Monroe received 7,076,670 votes.    Without

the $450 she would have received only 5,771,670 votes. The money advanced by Carr was returned to him, and he surrendered to defendants their promissory note. Plaintiff brought this action to recover the money advanced by him on the ground that it was obtained by fraud. The action was tried by the court without a jury, which, upon the facts found, entered the following conclusions of law:

"(1) That said contest was for the purpose of securing subscribers to the Journal-Observer, and that said Journal-Observer is under the exclusive ownership of the George A. Clark Printing Company, and that these defendants nor either of them are not liable in their personal capacity for any of the transactions set out in plaintiff's complaint or as appears in the testimony herein; (2) that the agreement made between the plaintiff and the plaintiff's wife and the said McGovern was inequitable and unjust and a fraud upon the other contestants in said automobile contest, and that such agreement is void as against public policy, and that the plaintiff is in pari delicto and cannot recover in this action; (3) that the plaintiff had no contractual relation whatever with these defendants or with any of the parties interested in said contest, and that he was not compelled to make the said payment of $450 to protect any interest that he might have therein, but that the plaintiff in making said payment was a mere volunteer, and that he cannot recover in this action; (4) that the defendants are entitled to a judgment to the effect that said complaint be dismissed, and for their costs and disbursements herein."

From a judgment dismissing the action and an order denying a new trial, plaintiff appeals.

Although many assignments of error are contained in appellant's brief, the only questions argued are four.

[1] Appellant first contends that the illegality of the contract to be available must be pleaded as a defense, and cannot be considered under an answer which is merely a general denial. An all-sufficient response to this contention is that it is not one which may be urged for the first time in the appellate court.

[2] Appellant next claims that the transaction between plaintiff and defendants was not illegal. The statement of facts above given ought to be sufficient to characterize the transaction as illegal, fraudulent, and against public policy. It ought not

to require a categorical assertion to that effect. No payment of money with a "string" to it could be an honest fulfillment of the terms of the contest, nor could any payment of money that was unaccompanied by a bona fide subscription list aggregating the amount of the payment. But plaintiff and his wife knew that they were acting fraudulently. The following appears in plaintiff's testimony:

"Q. Then you knew, Mr. Monroe, did you not, that in order for Mrs. Monroe to secure the benefit of the $450 which you put in, that it would be necessary for these votes in this contest to be counted for her in some way to the extent of that $450? A. I did not know. He (referring to McGovern) said he could get by with it. He said leave it to him and he would get by with it. He said that he might have something in case the judges called for it. Q. And you were perfectly willing that in case they did call for something that they should have this? A. It wasn't anything to me. Q. It didn't make any difference to you whether there was a fictitious list presented there or not, did it? A. Why, at that time I don't think I would have known whether it would have been a fictitious subscription or not. When I paid this money in I knew that we had put in no list with the money."

The following appears in Mrs. Monroe's testimony:

"Q. You knew, Mrs. Monroe, that the payment of the $450 was entirely outside of the terms of the contest for the automobile? A. I certainly knew it. Q. And you knew, Mrs. Monroe, that if Miss Carr's $600 was counted, and she had won the contest by putting in the $600 and furnishing actual subscribers, therefor you would be defrauding Miss Carr out of the automobile and preventing her from winning it by payment of $450? A. I knew that if she had not put in her $600 I did not defraud anybody. They tried to defraud me."

[3] It is not a justification of fraud to assert that it was perpetrated to overcome another fraud. But, regardless of whether the above shows any fraud on the part of the Monroes as against the Carrs, the action of plaintiff was clearly a fraud upon all honest contestants at that time.

[4] Appellant next claims that, if the transaction was illegal, the parties were not in pari delicto. No difficulty is presented in arriving at the conclusion that the parties were in fact equally

at fault, and that plaintiff participated in the fraud with his eyes open. But the rule of pari delicto (section 2423, C. C.) is subject at all times to the rule of public policy "which lies at the basis of the law of illegal contracts." In 6 R. C. L. 829, we find the following:

"Hence, even between parties in pari delicto, relief will sometimes be granted if public policy demands it. The general rule operates only in cases where the refusal of the courts to aid either party frustrates the object of the transaction, and takes away the temptation to engage in contracts contra bonos mores, or violating the policy of the law. If it is necessary, in order to discountenance such transactions, to enforce such a contract at law, or to relieve against it in equity, it will be done, though both the parties are in pari delicto."

The object of the transaction before us is not the carrying on of the contest, but is the obtaining of money by defendants from Carr and Monroe through illegitimate means. McGovern originated and put into operation a scheme to get this illegitimate profit from the contestants, and he was aided by defendant Smith, at least, in carrying it out. A judgment requiring defendants (or defendant Smith if he alone of the defendants was implicated) to refund the money paid by Monroe will "tend to frustrate" the commission of fraud in similar future contests because it will deter originators and managers of such contests from tempting contestants to enter into like dishonest schemes. Public policy will be better served by giving notice to the originator and manager of contests that such contests, although legitimate in themselves and in aid of honest business, must be honestly conducted, and that they shall not profit by working upon the cupidity of dishonest contestants. We therefore are of the opinion that upon the evidence plaintiff was entitled to a recovery against defendant Smith, at least, in the sum of $400. 6 R. C. L. 829; Pomeroy, Eq. Jur. § 941; 9 Cyc. 350; Stuart v. Wright, 147 Fed. 321, 77 C. C. A. 499; Hobbs v. Boatright, 195 Mo. 693, 93 S. W. 934, 5 L. R. A. (N. S.) 906, 113 Am. St. Rep. 709. Plaintiff was not entitled to recover from defendants the $50 paid to McGovern.

[5] Lastly it is urged that the court erred in its first conclusion of law. We think that such conclusion of law is unsound.

A person guilty of a tort cannot escape liability upon the theory that he committed the tort as an officer of a corporation.

For the reasons given, the judgment and order appealed from are reversed, and the cause remanded for a new trial.